# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT PADUCAH
# CIVIL ACTION NO. 5:14-CV-P185-GNS

**WILLIE COLEMAN SLAPPY**                                                        **PLAINTIFF**

v.

**CHAD FRIZZELL et al.**                                                                **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

Plaintiff, Willlie Coleman Slappy, filed a *pro se*, *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983. This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the reasons set forth below, the action will be dismissed in part and allowed to continue in part.

### I. SUMMARY OF CLAIMS

Plaintiff, who is a convicted prisoner incarcerated at the Hickman County Detention Center (HCDC), names as Defendants in their individual and official capacities the HCDC Jailer Chad Frizzell, HCDC medical staff member Amy Roell, and HCDC Lt. Jeff Rodgers. He also names the HCDC as a Defendant. He alleges that the HCDC has no exercise equipment. He states that he asked a deputy whether an apparatus for dips, push-ups, and pull-ups could be obtained. Plaintiff reports that the deputy told him "that the jailer said for us to be creative and use what was available to us." Plaintiff states that he and another inmate then began using a vent to do pull-ups. To reach the vent, they had to stand on a chair. On August 6, 2014, while doing pull-ups in this manner, Plaintiff's chair tipped over, leaving him hanging from his right arm. Plaintiff states that when he tried to reach his left arm up to grab the vent he felt a "pop" in his bicep.

Plaintiff told Defendant Roell what had happened, after which Plaintiff was scheduled to see an orthopedic surgeon at an outside hospital. The surgeon, Dr. Fulbright, diagnosed a torn ligament, tendon, and bicep and admitted Plaintiff to the hospital for surgery. Plaintiff states that before surgery he was told by the surgeon that he would be kept in the hospital for 23 hours after recovery for observation and so he could be given pain medication. However, Plaintiff states that shortly after he came out of surgery he was woken up by Defendant Rodgers who gave him an orange jumpsuit and told him to put it on and then Plaintiff "was signed out of the hospital." He alleges, "By Lt. Rodgers going against the surgeons orders to leave me to the hospital for 23 hour observation and pain medication (narcotic pain medicine is prohibited at HCDC) and signing me out of the hospital and ordering Deputy Curtis Stephens to bring me back to the jail was cruel and unusual punishment."

Plaintiff states that the next morning Defendant Roell came to the drunk-tank cell where he was being kept. Plaintiff asked if he could be put in a regular cell so he "could get up off of the floor get in a bunk and get a pillow or blanket to elevate my arm because the pain was extremely excruciating," but Defendant Roell left him there for five more hours with nothing but a blanket and 800 mg of Ibuprofen. He states that he went for a follow-up visit to Dr. Fulbright, had the outer stitches removed from the incisions, and was told to do exercises to stretch his arm out straight and bend it. He states that he could not get his arm to straighten or get back to normal strength. He states that he asked Defendant Roell if he could see a physical therapist and was told that he could not and that he should keep exercising his arm. He states that he continued to exercise and stretch his arm but that on September 8, 2014, he noticed what looked like an infection – one of his incisions "was swollen ooseing discharge and stitches was protruding from it." The next day he showed his arm to Defendant Roell who removed the

2

stitches sticking out of his arm and told him he would see a nurse the next day. On the next day, a nurse told him that he "had busted the stitches" in his arm and that the wound was infected and put him on antibiotics for ten days. He states that Defendant Roell cancelled his scheduled appointment with Dr. Fulbright the next day "so Dr. Fulbright had no idea about the problems I was having with my arm. I believe this was an intentional act by Amy Roell to cover up her negligence and the fact that she refused to let me see a physical therapist even though Dr. Fulbright advised her to take me to a physical therapist." He states that on September 25, 2014, a jail nurse examined his arm and diagnosed him with the bicep having been torn again. An appointment was made for him to see Dr. Fulbright.

Plaintiff also alleges that Defendant Roell has denied him copies of documents relating to his arm injury "because of this civil action." He states, "I've never had a problem getting copies until I needed them for this civil action against this facility." He asks the Court to look at his inmate account statement for evidence that in the past he has been given copies of documents even when he did not have funds in his account to pay for copies. He states, "I believe this denial is an attemp[t] to sabotage the credibility of this civil action and is a violation of my right to due process." He attaches a copy of an inmate memorandum in which he asks for copies of documents pertaining to treatment of his arm. That memorandum has the following response by Defendant Roell: "You have a negative balance at this time (-$10.89) copies cannot be made unless you have money on your account per jail protocol." He requests monetary, punitive, and injunctive relief.

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the

Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1) and (2). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The Court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. When determining whether a plaintiff has stated a claim upon which relief can be granted, the Court must construe the complaint in a light most favorable to Plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall,* 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### *Claims against HCDC and official-capacity claims*

Defendant HCDC is not an entity subject to suit; the § 1983 claim against it must be brought against Hickman County as the real party in interest. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (advising that since the county police department is not an entity which may be sued, the county is the proper party); *Bradford v. Hammond*, No. 3:05CVP459-H, 2005 WL 2739154, at *2 (W.D. Ky. Oct. 21, 2005) (construing a claim against Louisville Metro Corrections as one brought against Louisville/Jefferson County Metro Government); *Smallwood v. Jefferson Cnty. Gov't*, 743 F. Supp. 502, 503 (W.D. Ky. 1990) (concluding that a suit against the Jefferson County Government, the Jefferson County Fiscal Court, and the Jefferson County Judge Executive is actually a suit against Jefferson County itself).

Likewise, the official-capacity claims against Defendants Roell, Frizzell, and Rodgers are really against the county. "Official-capacity suits . . . 'generally represent [ ] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 690 n.55 (1978)). Suing Defendants in their official capacity is the equivalent of suing their employer, Hickman County. *See Lambert v. Hartman*, 517 F.3d 433, 439-40 (6th Cir. 2008) (stating that civil rights suit against county clerk of courts in his official capacity was equivalent of suing clerk's employer, the county).

When a § 1983 claim is made against a municipality, like Hickman County, the Court must analyze two distinct issues: (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights*, *Tex.*, 503 U.S. 115, 120 (1992). The Court will address the issues in reverse order.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691 (emphasis in original); *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)) (emphasis in *Pembaur*).

A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional

5

deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery Cnty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). Simply stated, Plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds*, *Frantz v. Village of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)); *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997) (indicating that plaintiff must demonstrate "deliberate conduct").

Here, Plaintiff has not alleged that any of the alleged constitutional violations were the result of any policy or custom of Hickman County. Consequently, the claims against Hickman County and Defendants Roell, Frizzell, and Rodgers in their official capacities will be dismissed.

### *Individual-capacity claim against Defendant Frizzell*

The only allegations against Defendant Frizzell involve Plaintiff's complaint that instead of providing exercise equipment for Plaintiff, a state inmate, Defendant Frizzell told Plaintiff that he would have to be "creative" in terms of exercising.

The Eighth Amendment does not mandate comfortable prisons. Instead, it obligates prison officials to ensure that the conditions under which prisoners are confined are, at least, humane. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In the context of "conditions of confinement" cases, the Eighth Amendment is concerned only with "deprivations of essential food, medical care or sanitation" or "other conditions intolerable for prison." *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981). Here, Plaintiff does not allege that he was denied the

6

chance to exercise, only that he was not provided equipment to do so. "Denial of exercise equipment, however, does not give rise to an Eighth Amendment violation. Plaintiff is not constitutionally entitled to exercise equipment." *East v. Cal. Dep't of Corr.*, No. 1:09-CV-01739-DLB, 2010 WL 3463880, at *3 (E.D. Cal. Sept. 1, 2010). Nor does Plaintiff explain why he could not have exercised in a safer manner, for example by doing pushups, sit-ups, and squats instead of hanging on a vent to do pull ups.

Moreover, his allegation that not providing exercise equipment violated Kentucky policies and procedures simply does not state a § 1983 claim. First, the state policies and procedures provide that a state inmate, such as Plaintiff, is entitled to "receive physical exercise at least 3 days a week." As discussed above, Plaintiff's allegations do not involve the denial of exercise, but rather of exercise equipment. Second, "[t]he violation of a right created and recognized *only* under state law is not actionable under § 1983." *See Harrill v. Blount Cnty., Tenn.*, 55 F.3d 1123, 1125 (6th Cir. 1995) (emphasis added). Therefore, the claim against Defendant Frizzell in his individual capacity will also be dismissed for failure to state a claim.

### *Individual-capacity claim against Defendant Roell regarding denial of copies*

Plaintiff claims that Defendant Roell's refusal to give him free photocopies violated his due-process rights. However, "Plaintiff has no protected property interest in free photocopies . . ., and is not entitled to due process because his request for free photocopies is denied." *Baldwin v. Brandle*, No. 3:11CV 2531, 2012 WL 895293, at *4 (N.D. Ohio Mar. 15, 2012). "Furthermore, because there is no fundamental right to free photocopies, Plaintiff would have to show Defendants' conduct was 'shocking to the conscious' to state a claim for denial of substantive due process." *Id.* None of Plaintiff's allegations rise to this level.

The Court also finds that Plaintiff's allegations regarding the refusal to provide free copies do not state a retaliation claim. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Plaintiff has the burden of proof on all three elements. *See, e.g.*, *Murray v. Evert*, 84 F. App'x 553, 556 (6th Cir. 2003).

The denial of his requested photocopies for free is not sufficiently adverse such that a person of ordinary firmness would be deterred from engaging in the protected conduct. *See Smith v. Yarrow*, 78 F. App'x 529 541 (6th Cir. 2003) (holding that an isolated incident of a refusal to photocopy prisoner's documents "not likely to deter a person of ordinary firmness from pressing on with his lawsuit.").

### *Individual-capacity Eighth Amendment claims against Defendants Roell and Rodgers*

The Court will allow the individual-capacity Eighth Amendment claims to go forward against Defendants Roell and Rodgers. In allowing these claims to continue, the Court expresses no opinion on the ultimate merits of those claims.

### III. CONCLUSION AND ORDER

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's claims against the HCDC, against Defendants in their official capacities, against Defendant Frizzell, and against Defendant Roell for her failure to provide free photocopies are **DISMISSED** with prejudice for failure to state a claim.

8

The Clerk of Court is **DIRECTED** to terminate the Hickman County Detention Center and Defendant Frizzell as Defendants in this action.

A separate Scheduling Order will be entered to govern the development of the continuing claims, *i.e.*, the individual-capacity Eighth Amendment claims against Defendants Roell and Rodgers.

Date: January 15, 2015

Greg N. Stivers, Judge
United States District Court

cc: Plaintiff, *pro se*
     Defendants
     Hickman County Attorney
4416.009